IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE: Peoples, Kwesi					CASE NO. 19-70880-JHH13

RESPONSE TO CREDITOR TITLEMAX'S
REPLY TO RESPONSE TO
OBJECTION TO CONFIRMATION

Comes now Counsel for the above named Debtor, Kwesi Peoples, and files this Response to Creditor TitleMax's Reply to Response to OBJECTION TO CONFIRMATION (the "Reply") (Doc 45), with reference to the Objection to Confirmation (the "OBJECTION") (Doc. 18), and states the following with respect to the cases and statutes referred to in its Reply:

A.	*Floyd v. Title Exchange and Pawn of Anniston, Inc.*, 620 So. 2d 576 (Ala 1993)

1.	In the first two (2) paragraphs of the Reply, Creditor TitleMax of Alabama, Inc. ("Creditor") takes issue with the Debtor's previous position that the transaction before this court may not be a pawn transaction, the Creditor is not a pawnbroker, and the certificate of title may not constitute "pledged goods." Debtor reiterates that the transaction herein under consideration was essentially a transfer of the Debtor's title to his vehicle to Creditor, and that aspect of the transaction is of such significance that the question arose as to what the Creditor possessed at the time of the filing of this Chapter 13 case.

2.	It would appear that *Floyd* did hold that a certificate of title was "pledged goods." It is worth noting that the issue of whether a title was "pledged goods" in that case was not because of a dispute over possession of a pawned vehicle or title, recovery of a repossessed vehicle, or any other matter regarding "possession" of pawned goods as in this case. Rather the issue was whether or not the Alabama Pawn Shop Act governed these title pawn transactions; or were they to be governed by the Alabama Small Loan Act.[1]

3.	The *Floyd* court held that **"if the Court's interpretation of the Alabama Pawnshop Act is incorrect, the legislature, of course, can easily amend the Act so that there will be no doubt in the mind of the lender or the regulator as to what the legislature intended."** (Creditor's sixth paragraph of the Reply).[2] The *Floyd* court stated, in upholding the decision of the trial court, that the Pawn Broker in that case had "at least 'constructive possession' of the automobile."

---

[1] Mr. Floyd, the Plaintiff in that case, was the supervisor of the Bureau of Loans of the State Banking Department. The concern was the usurious interest rates being charge in these transactions, i.e. **"small loans [being made] without a license and charges excessive rates of interest."** *Floyd,* and footnote 4. to Floyd, which discussed the difference of two to three percent interest per month under the Small Loan Act versus up to 25% under the Pawnshop Act.

[2] It will be discussed later the ramifications of this statement by the Alabama Supreme Court as it relates to similar statements made in *Northington,* 876 F. 3d 1302,1314 (11th Cir. 2017).

1

Case 19-70880-JHH13    Doc 56    Filed 09/13/19    Entered 09/13/19 16:12:26    Desc Main
Document    Page 1 of 7

4. Further, in *Floyd*, the Alabama Supreme Court upheld the trial court in the issue which was at hand, i.e. the usury law, made it clear by reference to the trial judge's conclusions of law, with the caveat that "it was **not an issue before the court [the superior lien in the property]** in the title pawn transactions taking place in the State of Alabama at the time."

5. This distinguishes the *Floyd* case from the case at hand in this chapter 13 filing of Mr. Peoples. *Floyd* begins by stating that "the sole issue at hand was whether a pawn transaction with the borrower retaining possession of his or her vehicle came within the Alabama Pawnshop Act enacted in 1992." But in *Floyd*, there was no actual vehicle in possession of either the pawn shop or the borrower. The matter under consideration was whether these type of transactions fall within the Act.

6. In citing *Floyd,* Creditor in its Reply placed great emphasis on *Floyd's* discussion of the general lending practices purportedly falling under the Alabama Pawn Shop Act and made reference to the Alabama Act,[3] yet omitted the reference made by the *Floyd* court to Georgia Code Section 44-12-130 in its footnote [5].

7. Paragraph 13. of Creditor's Motion for Relief from Stay (Doc. 19, page 4) makes the assertion that **"The 11th Circuit has considered these exact issues under Georgia's pawn statute, which is functionally identical to Alabama's pawn statute."** However, this is not the case, and no support for the "identicalness" is given at any point in the Creditor's arguments urging this court, and presumably other courts, to follow the *Northington* decision when considering any and all pawn title transactions in this state.

8. The difference between the Georgia and Alabama pawn shop acts are striking. The Georgia act appears to have been amended sometime around 1997 to adopt the specific language cited in *Floyd* at footnote [5] and [6]. It also broke out the definitions of the Rights in Personalty into a separate "Chapter 12, Part 5" as related to Pawnbrokers, and kept the bulk of the Georgia Pawn Act in "Chapter 14, several parts." This Chapter 14 has been cited by Creditor in its motions and objections before this court without reference to Chapter 12, Part 5, section 130. Particularly revealing is the attitude of the Supreme Court of Alabama in so citing, that **"Our legislature did not specifically state what it meant by the words 'tangible personal property' in the Act, as the legislatures of some other states have done[5]."**[4]

---

[3] Ala. Code 1975 § 5-19A-2(6).

[4] From the *Floyd* footnotes:
[5] The Georgia legislature, for example, specifically defined "pledged goods" to include automobile certificates of title. Section 44-12-130 of the Georgia Code provides, in part: " 'Pledged goods' means tangible personal property, including, without limitation, all types of motor vehicles or any motor vehicle certificate of title, which property is purchased by, deposited with, or otherwise actually delivered into the possession of a pawnbroker in connection with a pawn transaction. However, for purposes of this Code section, possession of any motor vehicle certificate of title which has come into the possession of a pawnbroker through a pawn transaction made in accordance with law shall be conclusively deemed to be possession of the motor vehicle…" and [6] Ala. Code 1975, § 5-19A-2(6), reads: "Pledged goods. Tangible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of a pawnbroker in connection with a pawn transaction."

2

B.  *Blackmon v. Downey,* 624 So. 2d 1374 (Ala. 1993).

   1.  *Blackmon* does not support Creditor's assertion that it has a superior lien to the Debtor in this case. If anything, *Blackmon* goes no further than to uphold the transaction as entered into between the two litigants as a pawn transaction. Downey was suing the defendants for trespassing in the repossession of her vehicle, and for the charging of a usurious rate of interest in the loan.

   2.  *Blackmon* re-stated the position of the Alabama Supreme Court in these matters from the *Floyd* case, that pawn transactions fall within the Alabama Pawnshop Act, and that "the transfer of automobile certificates of title for the purpose of giving security are 'pawn' transactions and not 'small loan' transactions governed by the provisions of Alabama's Small Loan Act."

   3.  Nowhere in the *Blackmon* decision does it concern the merits of a title pawn transaction giving a superior lien to the pawn broker. Thus, at the time of this decision, it has not been decided conclusively by the Alabama Supreme Court that mere possession of a certificate of title under the Alabama Pawn Shop Act would give the pawn broker a superior interest over any other regarding a vehicle which was not actually in its possession.

   4.  A holding by the Supreme Court of Alabama that "an automobile certificate of title is 'tangible personal property' within the meaning of the Alabama Pawnshop Act," as referred to by Creditor in page 3 of its Reply does not give or impute unto the Alabama Pawnshop Act the legislative intent given by the Georgia Legislature to its Pawnshop Act at O.C.G.A. § 44-12-130 (5).[5]

C.  *In re Jones,* 304 B.R. 462 (Bankr. N.D. Ala. 2003).

   1.  Again, Creditor is attempting to imply a broader definition of the term "tangible personal property" under the Alabama Pawn Shop Act and give it the same weight as under the Georgia equivalent of the Pawnshop Act.

   2.  Honorable Judge Caddell wrote an exhaustive opinion in this case for the United States Bankruptcy Court, N.D. Alabama, Northern Division. As stated in Creditor's Reply, the Court did make reference to the *Floyd* and *Blackmon* decisions. That reference appears to be for the limited purpose of determining whether holding a certificate of title by a pawnbroker constitutes a pawn transaction and thereby giving the pawnbroker certain rights under state law regarding the collateral.

---

[5] This case is problematic for the Creditor if cited in support of its position. In this case, the unusual situation arises where an individual, Mr. Downey, entered into what may have been a personal agreement with one of the defendants, and the vehicle was already repossessed and in the possession of one of the defendants when the matter was brought before the trial court. A default judgment was entered against the defendants and they appealed.

3

3. This case of *Jones* was one which involved a debtor filing for protection under the bankruptcy code while still in possession of the vehicle, but after the expiration of the thirty day grace period contemplated by Ala. Code § 5-19A-6.

4. *Jones* would acknowledge the rights of the pawnbroker once all redemptive rights of the borrower have been extinguished, whether or not in possession, versus the rights of the borrower (debtor) who still has redemptive rights and then files for protection of the Bankruptcy Court.

5. Helpful to the Debtor in this case is the Court's analysis and comparison of a situation which hypothetically could arise under the redemption statue regarding real estate foreclosure sales. The court cites the 11th Circuit case of *Commercial Fed. Mortgage Corp. v. Smith (In re Smith)*. 85 F. 3d 1555 (11th Cir. 1996). The court states that "the right of redemption could only be exercised by literally applying Alabama law which requires a lump sum payment within twelve months of the foreclosure sale, in this case, the debtor's right of redemption had expired and the obligation fully matured. There is no default for the debtor to cure. Had the debtor **filed bankruptcy before his right to redeem expired, the debtor would have been permitted consistent with Smith to pay Mayhall in one lump-sum payment within the allotted time.**" In other words, the Debtor would have retained possessory rights and could have included same in its bankrupt estate.

6. Comparing the analysis of the *Smith* case with this case, Debtor would have a right to include in his bankrupt estate an asset which was still redeemable under state law, and at issue in the case at hand, pay over the course of his chapter 13 plan because the Alabama Legislature has not expanded beyond the bare definition of "pledged goods" to include anything other than a right to "hold the certificate of title" as opposed to the Georgia statute which gives the possession of a certificate of title all the same rights as being in actual possession of the vehicle.[6]

7. The *Jones* court also stated "In this case, the debtors' interest in the vehicle terminated by law even before the debtors filed bankruptcy" and made reference to Ala. Code § 5-19A-6, a clearly distinguishable fact situation from this case.

8. Probably the most important and helpful comment made by the *Jones* court, as it relates to the Debtor's situation here, is the analysis of the differences between the Alabama Pawnshop Act and the Georgia Pawnshop Act. The *Jones* court stated "The Georgia forfeiture statute is similar to the Alabama forfeiture statute in that both provide for the forfeiture of the pledgor's ownership interest to the pawnbroker if the pledged goods are not redeemed within the grace period. **Notably, the Georgia Legislature specifically defined pledged goods in GA. CODE ANN. 44-12-130(5) to include motor vehicle certificates of title whereas ALA.CODE § 5-19A-2(6) merely defines pledged goods as items of tangible personal property.**"

---

[6] In re Lopez, 163 B.R. 189 (Bankr. D. Colo. 1994); In re Burnsed, 224 B.R. 496 (Bankr.M.D.Fla. 1998) (comparing Florida law to similar law of Alabama giving a right to include and pay through a chapter 13 plan.)

Case 19-70880-JHH13    Doc 56    Filed 09/13/19    Entered 09/13/19 16:12:26    Desc Main
Document    Page 4 of 7

However, as discussed above the Alabama Supreme Court has recognized that Alabama's definition of pledged goods covers motor vehicle certificates of title. [7]

9. Finally, the *Jones* court concluded its review of the cases cited there, and many more, by stating that the debtor in the case (Jones) "transferred title and ownership interest in the 2000 Pontiac Grand Am to Mayhall pursuant to Ala. Code §5-19A-6 when the pawn ticket matured without being paid before the debtor filed bankruptcy."[8] It may be argued that this court did not decide or state what it would have done had the debtor been in possession of the vehicle at the time of filing with a remaining redemption period. The cases referred to therein seem to indicate that the decision could have been favorable to the debtor, but that was not the case before the court.

D. *Ex parte Coleman,* 861 So. 2d 1080 (Ala. 2003).

1. This case is not helpful to the Creditor's position. Included within this lengthy decision is a reference to the standard recitation from the *Floyd* decision that "an automobile certificate of title is 'tangible personal property' within the meaning of the Alabama Pawnshop Act," and that "money-lending transactions involving the transfer of automobile certificates of title for the purpose of giving security are 'pawn' transactions." This is almost standard language in any case involving pawn transactions to establish that the matter is being considered under the Alabama Pawnshop Act.

2. However, *Coleman* goes on to say "*Floyd* holds only that 'an automobile certificate of title is 'tangible personal property' within the meaning of the Alabama Pawnshop Act,' and that 'money-lending transactions involving the transfer of automobile certificates of title for the purpose of giving security are 'pawn' transactions." *Blackmon v. Downey,* 624 So. 2d 1374, 1376 (Ala. 1993).

3. The significance of this holding and most helpful to the Debtor in the case at hand, is the court's statement: **"First, *Floyd* does not adopt the *Floyd* trial judge's opinion that a pawnbroker's possession of the keys and an endorsed title certificate to a car constitutes the pawnbroker's constructive possession of the car itself."** [9] [10]

---

[7] This is as far as the *Jones* court went with the comparison of the two state codes. It does note the differences between expiration of the redemption period and whether the pawnbroker or the debtor had possession of the vehicle. *Mattheiss v. Title Loan Express (In re Mattheiss),* 214 B.R. 20 (Bankr. N.D. Ala, 1997) held that possession of the vehicle by the Debtor gave the pawnbroker ownership of the certificate of title, but not the vehicle and did not transfer legal title in the automobile to the pawnbroker because the debtor never voluntarily delivered possession of the car to the pawnbroker. And, in *Mattheiss,* the thirty day redemption period had not expired when the bankruptcy was filed.

[8] *Jones, Id 471.*

[9] Compare this to Debtors discussion of the *Jones* opinion above along with the cases cited therein that would have held filing bankruptcy before the debtor loses possession and expiration of the redemption period would allow the vehicle to be included in the debtor's bankrupt estate, as well as Judge Caddell's conclusion that the Debtor in *Jones* lost the right to include the vehicle in his chapter 13 case because the vehicle, although still in the possession of the Debtors, **all redemptive rights had expired** under Alabama law.

5

4. Finally, *Coleman* was very factually different to the case at hand, in that that case was dealing with a wrongful repossession based on an *ore tenus* modification to the pawn agreement and failure to accept redemption funds within the redemption period.

E. *TitleMax v. Northington,* 876 F. 3d 1302, 1314 (11th Cir. 2017).

1. This case was carefully written and analyzed by the 11th Circuit involving a vehicle included in a bankruptcy case pending in Georgia, and accordingly the matter would have been scrutinized under applicable Georgia law.

2. This case factually was one where the debtor filed bankruptcy while in possession of his vehicle, and before the expiration of the redemption grace period.

3. The most important factor the *Northington* case considered before launching into its decision and the discussion of the applicable federal bankruptcy code sections was, in the first place, what was state law. It stated that **"the property rights of a debtor in a bankruptcy estate are defined by state laws."**

4. In setting the stage for the decision under bankruptcy law, the court considered the applicable pawn statute of Georgia, and cited Ga. Cod Ann. §44-14-403(b)(3).

5. Taking into consideration the gravity of the issue before the *Northington* court with all its subsequent ramifications for cases involving title pawn transactions, it nevertheless was dealing with a matter falling under Georgia state law, and therefore defined by Georgia state law. If the court relied on Georgia law, it must be presumed it relied on all relevant aspects of such Georgia law, including the definitional aspects of the Georgia Pawnshop Act referred to in paragraph A. 8. above, particularly the footnote to that paragraph and the reference to the *Floyd* discussion of the Georgia statute.

6. No Alabama Supreme Court decision concerning the Alabama Pawnshop Act, cited by the Creditor in its Reply, held that title to a vehicle under pawn in Alabama would automatically revert to the Pawnbroker by operation of law "as if the title was the vehicle itself."

7. Without further elucidation on the *Northington* case, reference to that case in matters involving Debtors under the jurisdiction of Alabama property law would not be helpful in deciding what a bankruptcy court should do or is required to do under similar or differing circumstances to those found in the *Northington* case, because the pawnshop laws of the two states are different as discussed above.

WHEREFORE, Premises considered, Debtor respectfully requests this Honorable Court to deny the Creditor's Objection to Confirmation.

---

[10] Also compare the significance of the differences between the Georgia Pawnshop Act and the Alabama Pawnshop Act as they relate to the definition of "pledged goods" and "constructive possession."

This the 13th day of September, 2019.

_____
JOHN E. BOCKMAN
Attorney for Debtor

OF COUNSEL:
BOCKMAN LAW, LLC
2601 7TH STREET
TUSCALOOSA, AL 35401
205.750.0043
mail@bockmanlaw.com

CERTIFICATE OF SERVICE

This certifies that on this day, September 13, 2019, a copy of this pleading will be electronically delivered to the Chapter 13 Trustee, C. David Cottingham, (dcottingham@ch13tuscaloosa.com) and via U. S. Mail, postage prepaid to counsel for TitleMax of Alabama, Inc., Hon. Jeffrey L. Ingram, Galese & Ingram, P.C., 800 Shades Creek Pkwy, Ste. 300, Birmingham, AL and jeff@galese-ingram.com .

_____
JOHN E. BOCKMAN